UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JAMES EDWARD SPENCER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 7:14-cv-00693-LSC-SGC |
| ) | |
| ROBERT BENTLEY, et. al., ) | |
| ) | |
| Defendants. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

On or about April 15, 2014, James Edward Spencer filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged by his arrest and incarceration at the Tuscaloosa County Jail in Tuscaloosa, Alabama. Plaintiff names the following individuals as defendants in their official and individual capacities: Alabama Governor Robert Bentley, Alabama Attorney General Luther Strange, Alabama Director of Public Safety Hugh McCall, Tuscaloosa County Sheriff William Sharp, and Deputy Charles Ray Jacobs (collectively, "Defendants"). (Doc. 1 at 3-4). In his complaint, Plaintiff seeks a declaratory judgment hearing to determine whether the Alabama Sex Offender Registration and Community Notification Act is unconstitutional as applied to him, a preliminary and permanent injunction that enjoins enforcement of the Act, restoration of his driver's license back to the "status quo[]," and compensatory and punitive damages. (*Id*. at 8). On or about July 11, 2014, Plaintiff filed a motion requesting a preliminary injunction enjoining enforcement of the Act. (Doc. 8). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate

1

judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).  The purpose of this report and recommendation is to address the request for preliminary injunctive relief Plaintiff makes in his complaint (Doc. 1) and by motion (Doc. 8).

## I. Standard of Review

"A preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." *Northeastern Fla. Chapter v. Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990).  To obtain a preliminary injunction a movant must demonstrate "(1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest." *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985); *Gold Coast Publ'ns, Inc. v. Corrigan*, 42 F.3d 1336, 1343 (11th Cir. 1994).

## II.  Factual Allegations

Plaintiff admits he was convicted of first degree sexual abuse in 1988, for which he was released from prison in 1991.  (Doc. 1 at 3).  Although he claims Alabama's sex offender registration and notification law has continually violated his constitutional rights from November 15, 1997 to the present, Plaintiff's current troubles and the impetus for the present lawsuit began on March 14, 2014.  (*Id.*).

On that date Deputy Sheriff Charles Ray Jacobs arrested Plaintiff in the carport of his sister's home in Tuscaloosa, Alabama for ASORCNA violations.  (*Id.* at 5).  The warrants accused Plaintiff of establishing a residence at his sister's home between December 25, 2013 and

March 14, 2014 without registering that address, which was within "2000 feet of a school or childcare facility . . . or with a minor." (*Id*. at 18-22) (citing Ala. Code §§ 15-20A-10 & 11).

After his arrest Plaintiff signed a *Miranda* waiver and gave a written statement. (*Id.* at 9-10). He wrote:

> I was put out of Jesus Way Shelter on December 25, 2013. Since that time I have been registering as homeless with Inv. Dean at a location of the Old Credit Union Building at the area of Kicker Rd and 25th Ave E. Since December of 2013, on cold nights, I have been staying at my sister[']s house (2200 3rd St. E.) three or four nights a week. I have a great niece, Jemera Anthony, age 6 and a great nephew, Jonathon Anthony, age 3, who also live at the residence. I told Inv. Dean that I have a sister who lives close by and I would stay there when it was cold, and out of the weather.
>
> I asked Deputy Jacobs if he understood the U.S. Constitution and he said that he did. I told him that this law has Supreme Court cases that make it invalid and he still arrested me.

(*Id.* at 10-11).

The State moved to dismiss the original case brought against Spencer in connection with his March 14th arrest because "the acts outlined in the deposition [did] not reflect the charge listed on the warrant." (*Id.* at 14); *see also State v. Spencer*, DC-2014-20636. However, in its motion to dismiss, the State indicated the Tuscaloosa County Sheriff's Office intended to "obtain a warrant with the correct deposition." (*Id.*). State court records confirm three pending ASORCNA violation charges stemming from the factual circumstances described by Plaintiff. *See State v. Spencer,* DC-2014-20637, DC-2014-20638 and DC-2014-20763.[1] Plaintiff waived preliminary hearings in each case on May 14, 2014, and the cases are currently awaiting

---

[1] The undersigned takes judicial notice of the state court criminal charges currently pending against Plaintiff. *See Coney v. Smith*, 738 F.2d 1199, 1200 (11th Cir. 1984) (citing *Moore v. Estelle*, 526 F.2d 690, 694 (5th Cir. 1976)); Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Keith v. DeKalb County, Georgia*, 749 F.3d 1034, 1041 n.18 (11th Cir. 2014) (judicial notice taken of an online judicial system similar to AlaCourt).

examination by a grand jury.  (*Id.*)

In his complaint, Plaintiff claims the Act as applied to him violates numerous constitutional rights and other federal laws.  (Doc. 1 at 3-8).[2]  He demands a preliminary injunction to enjoin enforcement of the Act but does not specifically assert the law he relies upon for that relief.  (*Id.* at 8).

In a separate motion for preliminary injunctive relief, however, Plaintiff claims ASORCNA is being unconstitutionally applied to him in violation of the *Ex Post Facto* Clause and procedural and substantive due process.  (Doc. 8 at 2-4, 6).  He declares because of the Act, "he can't live with [his] sister, family or friends" and demands his "immediate release from custody" because he is "factual[ly] and actual[ly] innocent of being incarcerated" pursuant to *Carr v. United States*, --- U.S. ---, 130 S. Ct. 2229 (2010).  (*Id.*).

### III.  Analysis

To the extent Plaintiff requests the State of Alabama be enjoined from enforcing the Act (Doc. 1 at 8), it is well established a federal court will not interfere with ongoing state criminal proceedings except under extraordinary circumstances.

> In *Younger v. Harris,* the Supreme Court held that abstention is appropriate where federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings; the Court recognized exceptions for bad faith, harassment, or a patently invalid state statute.  401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).  In *Samuels v. Mackell,* the Court extended *Younger* to cases in which federal jurisdiction was invoked for the purposes of obtaining declaratory relief when the federal plaintiff is a defendant in a pending state criminal prosecution, if *Younger* would have barred an injunction in the circumstances.  401 U.S. 66, 91 S. Ct. 764, 27 L. Ed. 2d 688 (1971). . . . . A state's trial and appeals process is considered "a unitary system," and *Younger*

---

[2] Spencer claims violations of the *Ex Post Facto* Clause, equal protection, the Fair Housing Act and Equal Employment Opportunity Act, procedural due process, and substantive due process, and that he has been deprived of liberty and property interests under the First and Fourteenth Amendments, has suffered a "loss of society," and has been subjected to cruel and unusual punishment.

4

> prevents a federal court from disrupting the process while a case is on appeal. *See New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, ——, 109 S. Ct. 2506, 2518, 105 L. Ed. 2d 298 (1989). Thus, as long as a federal challenge to a state statute or local ordinance "relate[s] to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state court litigation mandates that the federal court stay its hand." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 14, 107 S. Ct. 1519, 1527, 95 L. Ed. 2d 1 (1987).

*Redner v. Citrus County, Florida*, 919 F.2d 646, 649 (11th Cir. 1990) (redaction supplied).

According to the *Younger* abstention doctrine, this court must abstain from deciding Plaintiff's federal challenges to the Alabama statute in question. To the extent Plaintiff's reliance on *Carr v. United States*, --- U.S. ---, 130 S. Ct. 2229 (2010), can be construed as an argument encouraging this court to find extraordinary circumstances justify an exception to *Younger* abstention, the argument is without merit. *Carr* involved questions concerning the Sex Offender Registration Notification Act (SORNA), a federal law. 130 S. Ct. at 442. In that case, the petitioner pled guilty to first degree sex abuse in May of 2004. *Id.* In 2007 the petitioner was charged with violating SORNA because, in either 2004 or 2005, he travelled to another state and failed to register when SORNA became law in 2006. *Id.* The petitioner argued his prosecution would violate the *Ex Post Facto* clause because his travel occurred at least one year *before* SORNA's 2006 enactment. *Id.* The Supreme Court agreed with the petitioner on statutory construction grounds but did not reach the constitutional question. *Id.* at 458. The Court found the present tense language of the 2006 federal statute and the Congressional intent expressed in committee comments showed the statute did not read nor did Congress intend prosecution under the statute for "preenactment travel."

Plaintiff has been charged with violating ASORCNA, a completely different statute from the one at issue in *Carr*. Plaintiff admits he has been subject to Alabama registration and

5

notification requirements since 1997 and that ASORCNA, in its current form, was enacted in 2011. Plaintiff allegedly violated the Act between December of 2013 and March of 2014, long after its enactment. Thus, neither the concerns present in *Carr* nor the Supreme Court's holding in that case have any bearing on Plaintiff's case. Moreover, the undersigned finds persuasive an Eleventh Circuit decision rejecting a constitutional attack on ASORCNA based on the *Ex Post Facto* Clause. *See Windwalker v. Governor of Alabama*, 2014 WL 4290604, at *1-3 (11th Cir. Sept. 2, 2014).

Plaintiff also seems to rely on *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494 (1977), for the proposition he has the "right to choose to live" wherever he desires. (Doc. 1 at 6). Again, that case does not address Plaintiff's circumstances. The petitioner in *Moore* attacked a city ordinance that "limited occupancy of a dwelling unit to members of a single family[,] . . . . but the ordinance contain[ed] an unusual and complicated definitional section that recognize[d] as a 'family' only a few categories of related individuals." *Moore*, 431 U.S. at 495-96. Because Moore's family did fit any of the categories, she was convicted of violating the ordinance. *Id.* at 496.

The Supreme Court held the ordinance was an "intrusive regulation of the family" for which "the usual judicial deference to the legislature [was] inappropriate." *Id.* at 499. The Court stated it had "long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Id*. (internal citation omitted). The Court found the legitimate government interests advanced by the ordinance—"preventing overcrowding, minimizing traffic and parking congestion, and avoiding undue financial burden on East Cleveland's school system"—were, at best, only

marginally served by the ordinace  *Id.* at 499-500.  Moreover, Cleveland also had another ordinance in place to address overcrowding, and that ordinance limited occupancy based on population density.  *Id.* at 500 n.7.  The Court held the suspect ordinance violated substantive due process because "the Constitution prevents East Cleveland from standardizing its children and its adults by forcing all to live in certain narrowly defined family patterns."  *Id.* at 506.

Plaintiff does not explain how the constitutional ordinance problems in *Moore* bear any relation to his circumstances or ASORCNA, and the undersigned finds the two matters to be incomparable.  In fact, "the Supreme Court has not addressed whether substantive due process invalidates sex offender registration statutes[,]" and this circuit has found "no history or tradition that would elevate the issue to a fundamental right."  *Doe v. Moore*, 410 F.3d 1337, (11th Cir. (Fla.) 2005) (citing *Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1, 7-8 (2003).

> The circuit courts that have considered this substantive due process argument regarding sex offender registries have upheld such registration and publication requirements finding no constitutional infirmities.  *See, e.g., Doe v. Tandeske,* 361 F.3d 594, 597 (9th Cir. 2004) (per curiam) ("Persons who have been convicted of serious sex offenses do not have a fundamental right to be free from ... registration and notification requirements ...."); *Gunderson v. Hvass,* 339 F.3d 639, 643 (8th Cir.2003) (sex offender registration statute did not infringe the fundamental right to a presumption of innocence); *Paul P. [v. Verniero],* 170 F.3d [396] at 404, 405 [(1999)] (holding that sex offender registration did not infringe fundamental right of family relationships, and although the registration of offenders['] home address invaded the fundamental right to privacy, the state had a compelling interest to prevent future sex offenses).[FN5]  In *Paul P.,* the court held that the indirect effects of members of the public on the offender's relationship with his family did not rise to the infringement of a fundamental right by the state.  170 F.3d at 405.  As the court conceded, even if the effect of registration places a constitutionally recognizable claim on the offender's family relationships, it did not fall under a fundamental right classification because the sex offender statute did "not restrict plaintiffs' freedom of action with respect to their families and therefore does not intrude upon the aspect of the right to privacy that protects an individual's independence in making certain types of important decisions."  *Id.*
>
> FN5.  The Eighth Circuit has further held constitutional an Iowa

7

>statute banning sex offenders from living within 2000 feet of a school or child care facility, which was argued on similar substantive due process and right to travel grounds. *See generally Doe v. Miller,* 405 F.3d 700 (8th Cir. 2005).

*Doe v. Moore*, 410 F.3d 1337, 1344-1345 (11th Cir. 2005); *see also* W*indwalker*, 2014 WL 4290604, at * 2-4 (rejecting constitutional attacks on ASORCNA based on substantive due process and equal protection grounds and finding statute was rationally related to a legitimate government interest—regulating sex offenders for the sake of public safety.)

Additionally, Plaintiff cannot show his procedural due process rights have been violated by ASORCNA because he has been convicted of a sex offense.  See *Doe v. Moore*, 410 F.3d 1337, (11th Cir. (Fla.) 2005) (quoting *Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1, 7-8 (2003) (upholding a Connecticut sex offender registration statute against claims of procedural due process violation on grounds "no liberty interest was implicated because the . . . statute turned 'on an offender's conviction alone.'").  In short, Plaintiff received all the process he was due when he was charged and convicted of the sex crime.

For all of the foregoing reasons, Plaintiff has failed to show any exigent constitutional circumstances exist that would justify refusal to implement the *Younger* abstention doctrine. This court must abstain from addressing the federal challenges to the state statute under which Plaintiff is currently being prosecuted.  Moreover, Plaintiff has not shown a substantial likelihood of success on the constitutional claims for which he demands preliminary injunctive relief.  He has not shown he will suffer irreparable injury unless the injunction issues, that any threatened injury to him outweighs whatever damage the proposed injunction might cause the opposing party, or that an injunction would not be adverse to the public.

Finally, Plaintiff cannot demonstrate entitlement to a preliminary injunction releasing him

from custody because such relief is "not cognizable under § 1983." *See Grider v. Cook*, 522 Fed. Appx. 544, 547 (11th Cir. 2013) (quoting *Bradley v. Pryor*, 305 F. 3d 1287, 1289 (11th Cir. 2002) ("[H]abeas corpus [rather than § 1983] is the exclusive remedy for a state prisoner [or pre-trial detainee] who challenges the fact or duration of his confinement and seeks immediate or speedier release.")) (additional citation omitted, all but final alteration in original).

### IV. Recommendation

Accordingly, for the reasons stated above, the magistrate judge **RECOMMENDS** that Plaintiff's requests for preliminary injunctive relief (Doc. 1 at 8; Doc. 8) be **DENIED**.

### V. Notice Of Right To Object

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge."

**DONE** this 13th day of January, 2015.

/s/ Staci G. Cornelius
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE